UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIDERAY TECHNOLOGIES, INC., a Delaware corporation, and TEK84, INC., a Delaware corporation,<br><br>              Plaintiffs,<br><br>    v.<br><br>VIKEN DETECTION CORP., a Delaware corporation,<br><br>              Defendant. | CIVIL ACTION NO.:  23-13035 |

## COMPLAINT

Plaintiffs Videray Technologies, Inc. ("Videray") and Tek84, Inc. ("Tek84"), collectively "Videray"), by counsel, allege as follows for their Complaint against Defendant Viken Detection Corp. (" Viken").

## INTRODUCTION

1.      This is an action for a declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs request relief because Defendant has made it clear through correspondence to Plaintiffs that it intends to bring a lawsuit against Plaintiffs for allegedly infringing United States Patent No. 10,770,195 ("the '195 Patent"), United States Patent No. 11,200,998 ("the '998 Patent"), and United States Patent No. 11,776,706 ("the '706 Patent").

2.      This is an action for a breach of a settlement agreement ("the Settlement Agreement"). Plaintiffs request relief and specific performance of the settlement agreement because Defendant has made it clear through correspondence to Plaintiffs that it intends to

breach the Settlement Agreement by demanding that Plaintiffs cease and desist from commercializing Plaintiffs' PX1 and PX Ultra scanners ("the Accused Products") and provide an accounting of all sales of the Accused Products that have occurred. As a result of Defendant's breach of the Settlement Agreement, Plaintiffs have incurred, and will incur, substantial damages, including, attorneys' fees, loss of profit, loss of public reputation and costs in connection with enforcing the Settlement Agreement.

## THE PARTIES AND JURISDICTION

A.      **Videray Technologies, Inc.**

3.      Videray Technologies, Inc., formerly known as "Narcray Technologies," is a Delaware corporation with its principal place of business at 1 Thompson Sq., Suite 302, Boston, Massachusetts 02129.

4.      Videray is the world leader in the design and development of portable & miniaturized handheld x-ray imagers. Specifically, Videray's PX1 and PX Ultra scanners are hand-held x-ray backscatter imaging devices used by law enforcement and other customers in the safety & security market, as well as for Non-Destructive Testing ("NDT") applications in various industrial and commercial markets.

B.      **Tek84, Inc.**

5.      Tek84, Inc. is a Delaware corporation with its principal place of business at 13495 Gregg Street, Poway, California 92064.

6.      Tek84 develops and manufactures high-technology security products for screening and surveillance. Tek84 has pioneered the use of ultra-low-dose x-ray imaging products. Those products rapidly and safely screen for weapons, explosives, drugs, and other

contraband. Tek84 products have been widely deployed around the world by the TSA, the U.S. Department of Defense, and other government agencies.

7.      Tek84 is shareholder and investor of Videray, and a distributor of Videray products, including the Accused Products.

**C.      Viken Detection Corp.**

8.      Upon information and belief, Defendant Viken Detection Corp., formerly known as "Heuresis Corporation," is a Delaware corporation with its principal place of business at 21 North Avenue, Burlington, Massachusetts 01803.

9.      Upon information and belief, Viken is the current assignee and owner of the '195 Patent, and a security interest in the '195 Patent has been assigned to Horizon Technology Finance Corporation ("Horizon"). A true and correct copy of the '195 Patent is attached hereto as **Exhibit A**.

10.      Upon information and belief, Viken is the current assignee and owner of the '998 Patent, and a security interest in the'998 Patent has been assigned to Horizon. A true and correct copy of the '998 Patent is attached hereto as **Exhibit B**.

11.      Upon information and belief, Viken is the current assignee and owner of the '706 Patent. A true and correct copy of the '706 Patent is attached hereto as **Exhibit C**.

**D.      Jurisdiction and Venue**

12.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

13.      This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

14.     Viken is subject to general personal jurisdiction in this judicial district based upon its purposeful, systematic, and continuous contacts with Massachusetts, including its registration as a foreign corporation in Massachusetts and having a principal place of business in Massachusetts.

15.     Upon information and belief, this Court has personal jurisdiction over Viken because Viken directly or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products and services in the District of Massachusetts (including products and services that relate to and, on information and belief, may practice the '195 Patent, '998 Patent and/or '706 Patent), and otherwise purposefully directs activities to the District of Massachusetts.

16.     Further, Viken brought an action for damages against Videray in this District, as explained in greater detail below. As such, Viken has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being called into court in this District and has purposefully directed activities at residents of the state and this District.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) because Viken resides in the judicial district and because Viken is subject to personal jurisdiction within this judicial district.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b) at least because a substantial part of the events relating to Plaintiffs' claims occurred in this District and because the Defendant is subject to personal jurisdiction here, at least in part due to the aforementioned action brought in this District.

## BACKGROUND INFORMATION

19.     On March 29, 2019, Viken brought an action in the United States District Court for the District of Massachusetts for damages against Videray and Paul Bradshaw, an individual, in Case No. 1:19-cv-10614-NMG ("the First Action").

20.     Paul Bradshaw ("Bradshaw") is the President and Chief Executive Officer of Videray.

21.     On September 27, 2019, Viken and Peter Rothschild brought an action in the United States District Court for the District of Massachusetts for damages against John Doe, thereafter substituted with Paul Bradshaw, in Case No. 19-cv-12034-NMG ("the Second Action", and collectively with the First Action, "the Federal Actions").

22.     Upon information and belief, Peter Rothschild ("Rothschild") is the founder and Chief Technical Officer of Viken.

23.     On October 2, 2020, Viken, Rothschild, Videray and Bradshaw entered into the Settlement Agreement to resolve the Federal Actions and all claims by Viken and Rothschild against Videray and Bradshaw related to the PX1.

24.     Videray and Bradshaw signed the Settlement Agreement on October 2, 2020. Viken and Rothschild signed the Settlement Agreement on October 2, 2020.

25.     Section 6 of the Settlement Agreement states in relevant part:

General Release of Mr. Bradshaw and Videray.

… Viken and Dr. Rothschild, for themselves and their respective affiliates, predecessors, successors, parents, subsidiaries, assigns, shareholders, owners, officers, trustees, directors, agents, insurers, attorneys, representatives and employees (referred to in this section as "Releasors") **hereby release, remise covenant not to sue, and forever discharge** . . . Videray and its affiliates, predecessors, successors, parents, subsidiaries, assigns, shareholders, owners, officers, trustees, directors, agents, insurers, attorneys, representatives and employees ("Videray Releasees") **of and from all claims**, acts, debts, demands,

actions, causes of action, suits, counterclaims, dues, sums of money, accounts, reckoning, judgments, covenants, contracts, controversies, agreements, promises, representations, damages and liabilities whatsoever of every name and nature, both in law and equity, **known or unknown**, which against . . . the Videray Releasees the Releasors **ever had, now have or may have** from the beginning of the world to the date of this Agreement, **including without limitation those which relate in any way to or arise out of the Federal Actions**.

Settlement Agreement, section 6.

26.     Section 14 of the Settlement Agreement states in relevant part:

Cooperative Drafting and Construction. Each Party has cooperated in the drafting and preparation of this Agreement. Thus, this Agreement shall not be construed against any Party on the basis that such Party was the drafter.

*Id.* at section 14.

27.     As a result of the Settlement Agreement, the parties to the Federal Actions voluntarily stipulated to the dismissal of the Federal Actions with prejudice on October 5, 2020.

28.     On June 24, 2022, however, Viken sent Tek84 a demand letter (the "Original Demand Letter"), alleging claims that are barred by the Settlement Agreement.

29.     In an August 10, 2022, letter to Viken's counsel, Tek84 informed Viken that "Viken's claims, along with the request that Tek84 cease all activities regarding the PX1, are both improper and barred by Viken's past actions."

30.     On September 19, 2023, however, Viken sent a second demand letter (the "Second Demand Letter") to Tek84 and Videray, responding to Tek84's August 10, 2022, letter and further alleging claims of patent infringement of the '195 Patent, the '998 Patent and the '706 Patent and the demand that Plaintiffs cease and desist all activities regarding the Accused Products, that are barred by the Settlement Agreement.

31.     By executing the Settlement Agreement, Viken released "Videray and its affiliates," including Tek84, from any liability "of and from all claims . . . known or unknown . . . [that Viken] ever had, now have or may have . . . including without limitation those which

relate in any way to or arise out of the Federal Actions." The First Action included a complaint that "relates to a device the Defendants are marketing and offering for sale under the name 'Videray PX 1.'" First Action, Dkt. 1, ¶ 1. Viken's claims of patent infringement and demand to cease and desist are claims that Viken released and waived by executing the Settlement Agreement.

32.     As a direct result of Viken's breach of the Settlement Agreement, Plaintiffs have incurred, and will continue to incur, monetary damages associated with enforcing the Settlement Agreement.

33.     In the event of a dispute or controversy arising out of or related to the Settlement Agreement, Section 12 of the Settlement Agreement provides that "[i]f the Parties are unable to resolve the dispute within 5 business days of first conferring with one another, then any Party may pursue any and all remedies in any court of competent jurisdiction …"

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '195 PATENT

34.     Plaintiffs incorporate by reference and reallege all of the foregoing paragraphs of this Complaint as if fully set forth herein.

35.     The '195 Patent issued on September 8, 2020, to Rothschild is titled "X-Ray Chopper Wheel Assembly." The '195 Patent was filed on April 5, 2018, and has an effective filing date of April 5, 2017.

36.     Upon information and belief, Viken is the current assignee and owner of the '195 Patent, and a security interest in the '195 Patent has been assigned to Horizon.

37.     Plaintiffs have not infringed and do not infringe any claims of the '195 Patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents.

38.    The '195 Patent has 2 independent claims, claims 1 and 20.

39.    Claim 1 of the '195 Patent recites:

1.    An x-ray chopper wheel assembly comprising:

a disk chopper wheel configured to rotate about a rotation axis thereof, the rotation axis perpendicular to a rotation plane of the disk chopper wheel, the disk chopper wheel having a solid cross-sectional area in the rotation plane, the disk chopper wheel configured to absorb x-ray radiation received from an x-ray source at a source side of the disk chopper wheel, the disk chopper wheel defining one or more radial slit openings configured to pass x-ray radiation from the source side of the disk chopper wheel to an output side of the disk chopper wheel;

a source-side scatter plate having a solid cross-sectional area in a plane substantially parallel to the rotation plane of the disk chopper wheel, the source-side scatter plate configured to absorb x-ray radiation and defining an open slot therein configured to pass x-ray radiation, wherein the solid cross-sectional area of the source-side scatter plate is substantially smaller than the solid cross-sectional area of the disk chopper wheel; and

a support structure configured to secure the source-side scatter plate in the plane substantially parallel to the rotation plane of the disk chopper wheel with a source-side gap between the source-side scatter plate and the source side of the disk chopper wheel wherein the disk chopper wheel and source-side scatter plate are arranged relative to each other to cause a substantial confinement of x-rays that are scattered from the disk chopper wheel.

40.    Claim 20 of the '195 Patent recites:

20.    An x-ray chopper wheel assembly comprising:

a disk chopper wheel configured to absorb x-ray radiation received, at a source side of the disk chopper wheel, from an x-ray source; and

a source-side scatter plate arranged relative to the disk chopper wheel to cause a substantial confinement of x-rays that are scattered from the disk chopper wheel.

41.    The Accused Products do not infringe claim 1 because the Accused Products do not include every limitation required by claim 1. As one example, claim 1 of the '195 Patent requires "a source-side scatter plate." The Accused Products do not meet this limitation, either

-8-

directly or under the doctrine of equivalents, at least because the Accused Products do not have a source-side scatter plate.

42.     Accordingly, at least for the above reasons, the Accused Products do not infringe independent claim 1 of the '195 Patent, either literally or under the doctrine of equivalents. Furthermore, independent claim 20 recites similar limitations to claim 1, and therefore the Accused Products do not infringe claim 20 either literally or under the doctrine of equivalents for similar reasons.

43.     Plaintiffs also do not induce infringement of the '195 Patent, or otherwise indirectly infringe the '195 patent, for at least the reasons stated above with respect to no underlying direct infringement of the '195 Patent, because Plaintiffs have not acted with the specific intent necessary for induced infringement.

44.     Plaintiffs also do not contributorily infringe the '195 Patent for at least the reasons stated above with respect to no underlying direct infringement of the '195 Patent, because Plaintiffs have not acted with the specific intent necessary for contributory infringement.

45.     As set forth above, there exists an actual controversy between Plaintiffs and Defendant with respect to alleged infringement of the '195 Patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether the asserted claims of the '195 Patent are infringed.

46.     Accordingly, Plaintiffs request a judicial determination and declaration of the respective rights and duties of the parties with respect to the '195 Patent. Such a judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the asserted claims of the '195 Patent.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '998 PATENT

47.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

48.     The '998 Patent issued on December 14, 2021 , to Rothschild and is titled "X-Ray Chopper Wheel Assembly." The '998 Patent is a continuation application of the '195 Patent. The '998 Patent was filed on July 22, 2020, and has an effective filing date of April 5, 2017.

49.     Upon information and belief, Viken is the current assignee and owner of the '998 Patent, and a security interest in the'998 Patent has been assigned to Horizon.

50.     Plaintiffs have not infringed and do not infringe any claims of the '998 Patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents.

51.     The '998 Patent has 3 independent claims, claims 1, 16 and 19.

52.     Claim 1 of the '998 Patent recites:

1.     An x-ray chopper wheel assembly comprising:

a disk chopper wheel configured to rotate about a rotation axis thereof, the rotation axis perpendicular to a rotation plane of the disk chopper wheel, the disk chopper wheel having a solid cross-sectional area in the rotation plane, the disk chopper wheel configured to absorb x-ray radiation received from an x-ray source at a source side of the disk chopper wheel, the disk chopper wheel defining one or more openings configured to pass x-ray radiation from the source side of the disk chopper wheel to an output side of the disk chopper wheel; and

an output-side scatter plate arranged at the output side of the disk chopper wheel and configured to absorb x-rays scattered from the disk chopper wheel, the output-side scatter plate defining an open slot therein configured to pass x-ray radiation, the output-side scatter plate having a solid cross-sectional area in a plane substantially parallel to the rotation plane of the disk chopper wheel, wherein the solid cross-sectional area of the output-side scatter plate is substantially smaller than the solid cross-sectional area of the disk chopper wheel.

53.    Claim 16 of the '998 Patent recites:

16. An x-ray chopper wheel assembly comprising:

a chopper wheel having a solid area configured to block x-ray radiation received at a source side of the chopper wheel from an x-ray source, the chopper wheel defining one or more openings configured to pass x-ray radiation from the source side of the chopper wheel to an output side of the chopper wheel; and

a source-side scatter plate arranged relative to the chopper wheel with a source-side gap in a range of approximately 0.5 mm to approximately 1.0 mm between the source-side scatter plate and the source side of the chopper wheel, the source-side scatter plate being arranged to limit leakage, from the x-ray chopper wheel assembly, of x-rays scattered from the chopper wheel.

54.    Claim 19 of the '998 Patent recites:

19. An x-ray chopper wheel assembly comprising:

a chopper wheel having a solid area configured to block x-ray radiation received at a source side of the disk chopper wheel from an x-ray source, the chopper wheel defining one or more openings configured to pass x-ray radiation from the source side of the chopper wheel to an output side of the chopper wheel; and

an output-side scatter plate arranged relative to the chopper wheel with an output-side gap in a range of approximately 0.5 mm to approximately 1.0 mm between the output-side scatter plate and the output side of the chopper wheel.

55.    The Accused Products do not infringe claim 1 because the Accused Products do not include every limitation required by claim 1. As one example, claim 1 of the '998 Patent requires "an output-side scatter plate." The Accused Products do not meet this limitation, either directly or under the doctrine of equivalents, at least because the Accused Products do not have an output-side scatter plate.

56.    Accordingly, at least for the above reasons, the Accused Products do not infringe independent claim 1 of the '998 Patent, either literally or under the doctrine of equivalents. Furthermore, independent claim 19 recites similar limitations to claim 1, and therefore the

Accused Products do not infringe claim 19 either literally or under the doctrine of equivalents for similar reasons.

57.     The Accused Products also do not infringe claim 16 because the Accused Products do not include every limitation required by claim 16. As one example, claim 16 of the '998 Patent requires "a source-side scatter plate." The Accused Products do not meet this limitation, either directly or under the doctrine of equivalents, at least because the Accused Products do not have a source-side scatter plate.

58.     Accordingly, at least for the above reasons, the Accused Products do not infringe independent claims 1, 16 and 19 of the '998 Patent, either literally or under the doctrine of equivalents.

59.     Plaintiffs also do not induce infringement of the '998 Patent, or otherwise indirectly infringe the '998 patent, for at least the reasons stated above with respect to no underlying direct infringement of the '998 Patent, because Plaintiffs have not acted with the specific intent necessary for induced infringement.

60.     Plaintiffs also do not contributorily infringe the '998 Patent for at least the reasons stated above with respect to no underlying direct infringement of the '998 Patent, because Plaintiffs have not acted with the specific intent necessary for contributory infringement.

61.     As set forth above, there exists an actual controversy between Plaintiffs and Defendant with respect to alleged infringement of the '998 Patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether the asserted claims of the '998 Patent are infringed.

62.     Accordingly, Plaintiffs request a judicial determination and declaration of the respective rights and duties of the parties with respect to the '998 Patent. Such a judicial

declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the

asserted claims of the '998 Patent.

## THIRD CAUSE OF ACTION

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '706 PATENT

63.    Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of

this Complaint as if fully set forth herein.

64.    The '706 Patent issued on October 3, 2023, to Rothschild and is titled "X-Ray

Chopper Wheel Assembly and Method." The '706 Patent is a continuation application of the

'998 Patent, which is a continuation application of the '195 Patent. The '706 Patent was filed on

November 15, 2021, and has an effective filing date of April 5, 2017.

65.    Upon information and belief, Viken is the current assignee and owner of the '706

Patent.

66.    Plaintiffs have not infringed and do not infringe any claims of the '706 Patent

either directly, contributorily, or by inducement, literally or under the doctrine of equivalents.

67.    The '706 Patent has 4 independent claims, claims 1, 5, 6 and 18.

68.    Claim 1 of the '706 Patent recites:

1.    An x-ray chopper wheel assembly comprising:

a chopper wheel having a solid area configured to block x-ray radiation
received at a source side of the chopper wheel from an x-ray source, the
chopper wheel defining one or more openings configured to pass x-ray
radiation from the source side of the chopper wheel to an output side of the
chopper wheel; and

a source-side scatter plate arranged relative to the chopper wheel with a
source-side gap in a range of approximately 0.2 mm to approximately 2.0
mm between the source-side scatter plate and the source side of the chopper
wheel.

69.    Claim 5 of the '706 Patent recites:

5.    A method of limiting x-ray leakage from an x-ray chopper wheel assembly, the method comprising:

configuring a chopper wheel of an x-ray chopper wheel assembly to have a solid area configured to block x-ray radiation received at a source side of the chopper wheel from an x-ray source;

configuring the chopper wheel to define one or more openings to pass x-ray radiation from the source side of the chopper wheel to an output side of the chopper wheel; and

arranging a source-side scatter plate of the chopper wheel assembly relative to the chopper wheel with a source-side gap in a range of approximately 0.2 mm to approximately 2.0 mm between the source-side scatter plate and the source side of the chopper wheel to limit leakage of scattered x-rays from the x-ray chopper wheel assembly.

70.    Claim 6 of the '706 Patent recites:

6.    A method of limiting x-ray leakage from an x-ray chopper wheel assembly, the method comprising:

configuring a disk chopper wheel of an x-ray chopper wheel assembly to receive, at a source side of the disk chopper wheel, x-ray radiation from an x-ray source; and

arranging a source-side scatter plate of the x-ray chopper wheel assembly relative to the disk chopper wheel to cause a substantial confinement of x-rays that are scattered from the disk chopper wheel.

71.    Claim 18 of the '706 Patent recites:

18. A method of limiting x-ray leakage from an x-ray chopper wheel assembly, the method comprising:

receiving, at a source side of a disk chopper wheel of the x-ray chopper wheel assembly, x-ray radiation from an x-ray source; and

substantially confining x-rays that are scattered from the disk chopper wheel by using a source-side scatter plate arranged relative to the disk chopper wheel.

72.    The Accused Products do not infringe claim 1 because the Accused Products do

not include every limitation required by claim 1. As one example, claim 1 of the '706 Patent

-14-

requires "a source-side scatter plate." The Accused Products do not meet this limitation, either directly or under the doctrine of equivalents, at least because the Accused Products do not have a source-side scatter plate.

73.     Accordingly, at least for the above reasons, the Accused Products do not infringe independent claim 1 of the '706 Patent, either literally or under the doctrine of equivalents. Furthermore, independent claims 5, 6 and 18 recite similar limitations to claim 1, and therefore the Accused Products do not infringe claims 5, 6 and 18 either literally or under the doctrine of equivalents for similar reasons.

74.     Plaintiffs also do not induce infringement of the '706 Patent, or otherwise indirectly infringe the '706 patent, for at least the reasons stated above with respect to no underlying direct infringement of the '706 Patent, because Plaintiffs have not acted with the specific intent necessary for induced infringement.

75.     Plaintiffs also do not contributorily infringe the '706 Patent for at least the reasons stated above with respect to no underlying direct infringement of the '706 Patent, because Plaintiffs have not acted with the specific intent necessary for contributory infringement.

76.     As set forth above, there exists an actual controversy between Plaintiffs and Defendant with respect to alleged infringement of the '706 Patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether the asserted claims of the '706 Patent are infringed.

77.     Accordingly, Plaintiffs request a judicial determination and declaration of the respective rights and duties of the parties with respect to the '706 Patent. Such a judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the asserted claims of the '706 Patent.

**FOURTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '195 PATENT**

78.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

79.     The '195 Patent issued on September 8, 2020, to Rothschild and is titled "X-Ray Chopper Wheel Assembly." The '195 Patent was filed on April 5, 2018, and has a priority filing date of April 5, 2017.

80.     The claims of the '195 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103. For example, the claims of the '195 Patent are anticipated and/or obvious in view of at least the following references: United States Patent No. 3,790,799, United States Patent No. 4,031,401, United States Patent No. 4,472,822, United States Patent No.4,809,312, United States Patent No.7,561,666 and United States Patent No. 8,774,362. Further, one or more products of substantially similar design to the '195 Patent were on sale and provided to customers well before the priority date of the '195 Patent.

81.     As a result of the acts described in this Complaint, there exists a substantial controversy of sufficient immediacy and reality to warrant this issuance of a declaratory judgement as to the validity of the '195 Patent.

82.     An actual and justiciable controversy exists between Plaintiffs and Viken as to whether the claims of the '195 Patent are valid. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '195 Patent.

**FIFTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '998 PATENT**

83.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

84.     The '998 Patent issued on December 14, 2021, to Rothschild and is titled "X-Ray Chopper Wheel Assembly." The '998 Patent is a continuation application of the '195 Patent. The '998 Patent was filed on July 22, 2020, and has a priority filing date of April 5, 2017.

85.      The claims of the '998 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103. For example, the claims of the '998 Patent are anticipated and/or obvious in view of at least the following references: United States Patent No. 3,790,799, United States Patent No. 4,031,401, United States Patent No. 4,472,822, United States Patent No.4,809,312, United States Patent No.7,561,666 and United States Patent No. 8,774,362. Further, one or more products of substantially similar design to the '998 Patent were on sale and provided to customers well before the priority date of the '998 Patent.

86.     As a result of the acts described in this Complaint, there exists a substantial controversy of sufficient immediacy and reality to warrant this issuance of a declaratory judgement as to the validity of the '998 Patent.

87.     An actual and justiciable controversy exists between Plaintiffs and Viken as to whether the claims of the '998 Patent are valid. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '998 Patent.

## SIXTH CAUSE OF ACTION

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '706 PATENT

88.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

89.     The '706 Patent issued on October 3, 2023, to Rothschild and is titled "X-Ray Chopper Wheel Assembly and Method." The '706 Patent is a continuation application of the '998 Patent, which is a continuation application of the '195 Patent. The '706 Patent was filed on November 15, 2021, and has a priority filing date of April 5, 2017.

90.      The claims of the '706 Patent are invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103. For example, the claims of the '706 Patent are anticipated and/or obvious in view of at least the following references: United States Patent No. 3,790,799, United States Patent No. 4,031,401, United States Patent No. 4,472,822, United States Patent No.4,809,312, United States Patent No.7,561,666 and United States Patent No. 8,774,362. Further, one or more products of substantially similar design to the '706 Patent were on sale and provided to customers well before the priority date of the '706 Patent.

91.     As a result of the acts described in this Complaint, there exists a substantial controversy of sufficient immediacy and reality to warrant this issuance of a declaratory judgement as to the validity of the '706 Patent.

92.     An actual and justiciable controversy exists between Plaintiffs and Viken as to whether the claims of the '706 Patent are valid. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights regarding the '706 Patent.

**SEVENTH CAUSE OF ACTION**

**DECLARATORY JUDGMENT REGARDING SETTLEMENT AGREEMENT**

93.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

94.     An actual controversy has arisen and now exists between Videray, Tek84 and Viken concerning their respective rights and obligations to one another under Section 6 of the Settlement Agreement.

95.     Videray and Tek84 are entitled to a judicial determination that the claims asserted against Videray and Tek84 in the Original Demand Letter and the Second Demand Letter are barred by Section 6 of the Settlement Agreement.

96.     Such a determination is necessary and appropriate at this time under the circumstances because a dispute has arisen with respect to Viken's allegations of infringement by Videray, Tek84, and Videray's other customers based on the Original Demand Letter and Second Demand Letter that the parties have not been able to independently resolve.

97.     Section 12 of the Settlement Agreement states that "[i]f the Parties are unable to resolve the dispute within five business days of first conferring with one another, then any Party may pursue any and all remedies in any court of competent jurisdiction …"

**EIGHTH CAUSE OF ACTION**

**BREACH OF SETTLEMENT AGREEMENT**

98.     Plaintiffs incorporate by reference and realleges all of the foregoing paragraphs of this Complaint as if fully set forth herein.

99.     Viken entered into the Settlement Agreement with Videray on October 2, 2022.

100.   Videray has materially performed all acts, services, and conditions required of it under the Settlement Agreement.

101.   Viken has breached the Settlement Agreement by initiating correspondence over claims that are barred by the Settlement Agreement.

102.   As a direct result of Viken's breach of the Settlement Agreement, Videray has incurred, and will continue to incur, substantial damages, including attorneys' fees and costs, in connection with enforcing the Settlement Agreement.

103.   Section 12 of the Settlement Agreement allows Videray to seek an award of attorney's fees and costs expended in this litigation.

## JURY DEMAND

104.   Plaintiffs hereby request a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.   Declaring that judgment be entered in favor of Plaintiffs and against Defendant;

2.   Declaring that the Accused Products have not infringed and do not infringe, either directly, contributorily, by inducement, or willfully, any claims of the '195 Patent, either literally or under the doctrine of equivalents;

3.   Declaring that the Accused Products have not infringed and do not infringe, either directly, contributorily, by inducement, or willfully, any claims of the '998 Patent, either literally or under the doctrine of equivalents;

4.   Declaring that the Accused Products have not infringed and do not infringe, either directly, contributorily, by inducement, or willfully, any claims of the '706 Patent, either literally or under the doctrine of equivalents;

5.      Declaring that the claims of the '195 Patent, the '998 Patent and the '706 Patent are invalid;

6.      Declaring a judicial determination as to the parties' respective rights and obligations under the Settlement Agreement, and specifically, a judicial determination that Viken's Original Demand Letter and Second Demand Letter are barred by the Settlement Agreement;

7.      Declaring a judicial determination that Defendant is in breach of the Settlement Agreement and award compensatory damages.

8.      Finding this to be an exceptional case under 35 U.S.C. § 285, and awarding Plaintiffs reasonable attorneys' fees;

9.      Awarding prejudgment and post-judgment interest;

10.    Awarding Plaintiffs costs associated with this case; and

11.    Awarding Plaintiffs any other remedy or relief to which Plaintiffs may be entitled and which the Court deems just, proper, and equitable.

Dated: December 8, 2023

PLAINTIFF VIDERAY TECHNOLOGIES,
INC. and TEK84, INC.,
By their attorneys,


*/s/ David S. Godkin*
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
Birnbaum & Godkin, LLP
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Tel: (617) 307-6100
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

OF COUNSEL:

Stephen S. Korniczky*
Jesse A. Salen*
Ryan P. Cunningham*
SHEPPARD, MULLIN, RICHTER &
HAMPTON
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Tel.: (858) 720-8900
skorniczky@sheppardmullin.com
jsalen@sheppardmullin.com
rcunningham@sheppardmullin.com

*pro hac vice pending